## Campbell *vs.* Hillman.

15bm508
106  155

15bm508
f138  89

Case 54.

APPEAL FROM CHRISTIAN CIRCUIT.

1. An agent is individually responsible for a fraud committed by him in the sale of property.

2. If the agent represent his title to be good to the property sold, the fact that he referred to a will as evidence of that title, will not exonerate the agent from responsibility, if the representation be false and made in a manner calculated to induce belief.

3. To constitute fraud, it is not only necessary that the representation be untrue, but also that the party making it shall know it to be so at the time when it is made.

4. In an action for a fraud, if the fraud is established, the measure of recovery is, as a general rule, to be ascertained by the injury sustained. The criterion by which the injury, in a case like the present, is to be ascertained, is the difference between the value of the estate purchased and that which he obtained by the contract of purchase. Facts which occur subsequent to the purchase, which are calculated to show more satisfactorily what was the real value of the estate which the vendor professed to sell, may be given in evidence to show more clearly the extent of the damages to be assessed.

Case stated.

On the 31st July, 1846, John P. Campbell, as the agent of R. U. Buckner, sold to Daniel Hillman four slaves, for the sum of $2,243 34, and executed a bill of sale therefor, in the name of his principal, purporting to convey an absolute title to the slaves, when in fact Buckner had only a life estate in the slaves, with remainder to his children. This suit is brought against Campbell, alleging a false and fraudulent representation by him of the nature of the title which his principal held to the slaves, and that he represented the title as an absolute and clear title, when he knew that it was but an estate for life. The fraud was denied, and issue formed, and a trial had, in which there was a verdict and judgment for the plaintiff, for $1,200, and new trial was asked but refused, and the defendant has brought up the case to this court, complaining that the court below erred in its action in the opinions given in the progress of the trial, and in overruling the motion for a new trial.

*Wm. W. Wallace,* for appellant—

It is earnestly but respectfully insisted that the Circuit Court erred in refusing instructions marked 2 and 3, asked for by appellant, and in overruling his motion for a new trial.

The substance of the instructions Nos. 2 and 3 is the same, to-wit : That if Campbell, at the time of the treaty for the sale of the slaves to Hillman, represented that the title of his principal was good, but before the sale was made, and whilst the *locus penitentiæ* existed, informed Hillman that the slaves were held under the will of Francis Buckner, such information was notice to him of the trusts and limitations touching the title of Richard U. Buckner, specified in the will, and sufficient to put him upon inquiry ; and if, upon such information as the will, he failed to make the proper investigation into the title, the defendant, Campbell, is not chargeable with any misrepresentation in regard to the title of the slaves, although they may have been erroneous in point of fact. It is not admissible for a party to say that he is deceived as to the nature of a title when he is informed of the existence and locality of the writings on which it depends ; he has, in contemplation of law, notice of all the instrument contains, (*Hall vs. Smith,* 14 *Vez.* 425–6 ; *Sugden on Vendors, title notice,*) and there is no difference in contemplation of law between actual and constructive notice. This doctrine extends to all cases of fraud, actual or constructive, either at law or in chancery.

The gist of this action is the intentional fraud. (4 *Dana,* 370.) It is just as fair to hold Hillman to a knowledge of the contents of Buckner's will, as to hold Campbell to the presumed knowledge of the legal construction of its provisions because he was executor, especially as the last act of his administration of the will was more than twenty years before.

When a party neglects to avail himself of such information as is in his power, the court will not protect him. It is a sound equitable rule that the court

will not relieve against self-inflicted injuries, or such as could have been averted by reasonable forecast or common prudence. *Starkie on Evidence*, 2 *vol. page* 4, in speaking of the action of deceit, says: "The gist of the action is that the plaintiff was imposed upon by the fraud of the defendant. If, therefore, it appear that the plaintiff was aware of the falsity of the representation, or made the contract, to use a common phrase, *with his eyes open* to the defect, he is remediless, *for he was not deceived.* Nay, farther, *if he had the full means of detecting the fraud*, and ascertaining the truth and neglected to inform himself of it when he might easily have done so; or even if he placed a blind and willful confidence in a representation, which was not calculated to impose on a man of ordinary prudence and circumspection, it seems an action of deceit cannot be supported. For although the plaintiff may, in these cases, in point of fact, have been deceived, it is a consequence of his own folly, that he was so defrauded, and *vigilantibus non dormientibus jura subvenient.*" More authoritative adjudications are found in our own reports. A verbal communication by a stranger is sufficient notice. (*Currens vs. Hart, Hardin*, 37.) That which is sufficient to put a prudent man upon inquiry is tantamount to notice. (*Cotton vs. Hart*, 1 *Marshall*, 58 ; *Nantz vs. McPherson*, 7 *Monroe*, 599 ; *Russell vs. Petrie*, 10 *B. Monroe*, 86.)

In the case of *Moore vs. Turbeville*, 2 *Bibb*, 602, this court said that a false affirmation by a vendor, in a matter, the truth or falsehood of which the vendee might have tested by ordinary vigilance and attention, gave no cause of action, but applied the principle of constructive notice. The court said in substance that the law does not deny its aid in such cases because it looks upon a want of candor and sincerity with indulgence, but because it will not encourage that indolence and inattention which are no less pernicious to the interest of society, &c.

*Robert McKee*, on the same side—

1. It is indispensably necessary for the plaintiff to show that Campbell, the agent, at the time of the sale of the slaves to Hillman, actually knew that Buckner, his principal, had not such title to the slaves sold as he represented. It is not denied that Campbell knew that R. U. Buckner derived what title he had to the slaves under the will of Francis Buckner, but that is not sufficient to charge him with a fraud. It must appear that he knew that Buckner's title under his father's will was *but* a life estate, and not the absolute right. These questions, arising upon devises in wills, sometimes require a very high degree of legal skill to decide them. Whether an estate be merely for life or in fee, is sometimes a question of difficult solution. His knowledge upon that subject was a question of fact which should have been left to the jury upon the proof; the weight of which clearly shows that Campbell always treated Buckner's right to the slaves as absolute, and acted upon that belief, and actually purchased two slaves held by the same tenure at full prices.

2. The court should not have permitted the affidavit of Campbell, made long after the sale to Hillman, to prove Campbell's knowledge of the nature of Buckner's title to the slaves. It did not prove that at the sale he had such knowledge as he afterwards acquired.

3. Hillman having been referred by Campbell to the will of Francis Buckner, as the channel through which Richard U. Buckner derived title, was constructively in possession of the same knowledge in regard to the title of the slaves as Campbell had.

Constructive notice is not sufficient to charge a party with *actual fraud*, where the presumption arising from it is rebutted. The effect of it is merely to put the party having it on proof of fact negativing actual notice.

4. The criterion of damages fixed by the Circuit Court is erroneous. It makes the difference between

CAMPBELL
vs.
HILLMAN.

the price given and the supposed value of the life estate on the day of sale, without regard to the facts existing at the time of trial, the criterion. This supposed value is to be fixed by the opinions of witnesses on their recollection of facts as they existed years before they are called to testify. This rule would make Campbell liable for this difference, if all the negroes had died or had been killed, even by the mismanagement or negligence of the purchaser, on the next day after the purchase. In this case the purchaser has had eight years service of three of the slaves, and of the fourth until his death. The remaining three may die before the tenant for life. The purchaser has never been disturbed in the possession, and he never may be. If the slaves should all die before the life estate determines, will there ever be a cause of action? It may be that if those in remainder ever become entitled, they may choose to pursue Campbell and not seek to recover the slaves, and thereby Campbell be subjected to two recoveries against him for the same slaves.

Hillman is only entitled to recover, if at all, the actual damages sustained; he has sustained none; and the judgment ought to be reversed.

*L. W. Powell* and *J. Harlan*, for appellee—

Kent, in his Commentaries, (2 *vol. page* 487,) in speaking of the action of deceit, says: "The true rule was stated to be that the seller was liable to an action of deceit, if he fraudulently represent the quality of the thing sold in some particulars which the buyer has not equal means of knowledge with himself; or if he do so in such manner as to induce the buyer to forbear making the inquiry which, for his own security and advantage he would otherwise have made." Mr. Starkie says: "Such means must have been used as was likely to impose on a person of ordinary prudence and circumspection, to throw him off his guard on a point where he might reasonably place confidence in the representations of the

defendant. (*Starkie*, 2 *vol. page* 266; *Thomas vs. Mc-Can*, 4 *B. Monroe*, 202.) In 1819, the will of Francis Buckner was admitted to record in the county of Christian; and Campbell, the defendant, qualified as one of the executors. The sale of the slaves was made at the Empire Iron Works, in the county of Trigg. At the time of the sale, Hillman, the plaintiff, said that if there was any difficulty about the title, he did not wish to purchase the negroes. Campbell stated that the title was good; that he was executor and trustee under the will. The statement that he was executor and trustee, and that he knew that the title was good, was certainly calculated to deceive and mislead Hillman, and prevent his going to the neighboring county to examine the will. Such affirmation of title made by one who enjoyed the reputation of an honest and truthful, as well as a sensible business man, about a matter that his position as executor and trustee gave him full opportunity of knowing to be true, was certainly calculated to deceive any one who attached the least weight to his capacity and veracity. The affirmations of Campbell were presumed to be made upon knowledge, and if false and fraudulent, if made without knowledge in fact, were intended to deceive, and were fraudulent. The fact was one which Campbell could have ascertained with certainty, and Hillman would very naturally presume that an executor and trustee did have an accurate knowledge of the title of Buckner under the will. We are forced to the conclusion, from the proof, that Campbell had knowledge that Buckner had only a life estate in the slaves.

It is very clear, that upon the death of Robert U. Buckner, those in remainder will be entitled to recover the slaves from Hillman or any other person who may have them in possession, as was done in the case of *Boone vs. Dyke's legatees*, 3 *Monroe*, 529, where the possession had remained in Boone for nearly forty years. Hillman only obtained a life estate by his purchase, when he supposed, from the acts·

CAMPBELL
vs.
HILLMAN.

CAMPBELL
*vs.*
HILLMAN.

and statements of Campbell, he was obtaining the absolute title to the property. As respects the measure of damages, Campbell has no right to complain. The difference between the value of the life estate and the absolute title was the proper criterion. The jury were the judges of the amount, and the evidence sustains their verdict.

*J. W. Crockett, and Morehead & Brown*, on the same side—

1. The testimony shows clearly that Campbell, the defendant, represented to Hillman that the title to the slaves was clear and indisputable. The will shows that the interest was only a life estate. The facts, and the relation in which Campbell stood to the estate, being executor, &c., shows that he knew what was the interest held by his principal in the slaves sold.

2. The proof establishes these facts ; 1. A sale. 2. A representation by Campbell that the title was perfect. 3. That the title was only a life estate. 4. That the defendant knew of the defectiveness of the title. 5. That he lulled and deceived the plaintiff by his representations and assurances, and prevented that investigation of the title which otherwise might have been had. The Circuit Court did not err in refusing instructions two, three, and five. If it be admitted that the propositions of law are correctly stated, it is denied that they have any application to the facts of this case. They are abstract. Campbell, after stating that Buckner's title was derived through the will of Francis Buckner, did not leave Hillman to examine the will for himself; but asserted in positive terms that the title was good, and, to quiet any apprehension on the subject, added : "I am executor of the will, and know the true state of the title." Instruction number five was properly refused. It was misleading to say to the jury that the measure of damages is the actual damage sustained ; without indicating what the law regards as actual damage, is

calculated t♦ perplex and mislead. If a fraud was committed, the injury must be confined to the time the fraud was committed. No unforeseen subsequent events are admissible to augment or diminish the damages. In this case, the difference between the value of the life estate in the slaves and the absolute title is the criterion of recovery.

The case of *Moore vs. Turbeville*, 2 *Bibb*, 602, and the quotation from *Starkie*, 268, relied on by appellant, do not bear upon the instructions in this case. The expressions relied upon in the first case are mere dicta, as the case turned upon the representations *as to value*, and the general expression in Starkie is qualified by the examples which he gives. The true rule is laid down in *Kent's Com.* 2 *vol.* 487. If the instructions asked were correct in the abstract, the case as presented by the facts did not justify the application.

Judge Simpson delivered the opinion of the Court—

Two questions arise in this case: 1. Is the appellant responsible for representations made by him at the time of the sale, which he knew to be untrue, in relation to the title of the slaves which he, as the agent and attorney in fact of Richard U. Buckner, sold to the appellee? 2. If the purchaser has a right of recovery on account of the alleged fraud, what is the proper criterion of damages?

An ᴠagent is responsible individually to the purchaser for a fraud committed by him in the sale of property, although he does not profess to sell the property as his own, but acts thoroughly in his capacity as agent. (*Sugden on Vendors, page* 6.)

If the agent represented to the purchaser that his principal had a good title to the slaves, and the purchase was made upon the faith of that representation, the mere fact that the agent informed the purchaser that his principal derived title to the slaves under his father's will, and that the latter, after receiving this information, had sufficient time and opportunity to have examined the will himself, before

*Margin notes:*

CAMPBELL
*vs.*
HILLMAN.

February 6.

1. An agent is individually responsible for a fraud committed by him in the sale of property.

2. If the agent represent his title to be good to the property sold, the fact that he referred to a will as evidence of that title, will not exonerate the agent from responsibility, if the representa-

CAMPBELL
vs.
HILLMAN.

tion be false and
made in a man-
ner calculated
to induce belief.

he made the purchase, will not absolve the former from liability for the misrepresentation. When the inquiry about the title to the slaves was made by the purchaser, if he had been expressly referred to the will for information by the agent, or if the latter had expressed any doubt upon the subject, then, although he did state that the title was good and valid, yet it would have been incumbent on the purchaser if the statement were made in such a manner as to suggest a doubt about the title, to have investigated the subject himself, and if he had failed to do so, the mistake he labored under in relation to the title would have been the result of his own negligence, and he would have had no redress against the agent for any injury he sustained in consequence of it. But if the representations were such as were calculated to induce the purchaser to believe that the title was valid and really to prevent him from instituting any further inquiry in relation to it, and he made the purchase relying upon the information on the subject that he received from the agent, then the latter would be responsible for the fraud, if one was committed by him, although he did state that his principal derived title to the slaves under the will of his father. The information given by the agent to the purchaser, that he was himself one of the trustees named in the will, and consequently that there would be no difficulty in making him a good title to the slaves, although it suggested the existence of a trust, yet it at the same time conveyed the impression that the will authorized the sale to be made; and as the agent represented himself as one of the trustees, and stated that a good title would be made to the purchaser, this representation, inasmuch as it showed that he was well acquainted with the contents of the will, and the nature of the title to the slaves which his principal derived under it, instead of diminishing was calculated to increase the confidence of the purchaser, in the information imparted to him on this subject by the agent.

The argument therefore that this information, being sufficient to put the purchaser upon an inquiry, was constructive notice to him of the contents of the will, and all the trusts and limitations created by it, and that consequently he must be regarded as being aware of the falsity of the representations at the time he made the purchase is entirely fallacious, and the doctrine contended for is inapplicable to the facts of this case. The information in the manner in which it was communicated, was calculated to suppress instead of to excite inquiry on the subject. The purchaser did not place more confidence in the representation than a man of ordinary prudence and circumspection would have done under the same circumstances. It was calculated to mislead and deceive him, and although, by resorting to an examination of the will, he could have had the full means of detecting the fraud and ascertaining the truth, yet when he was prevented from doing this, by the character of the representation itself, it cannot be said with any degree of propriety that the deception under which he labored was the result of his own negligence.

1. To constitute fraud, however, it is not only necessary that the representation should be untrue, but also that the party making it should know it to be so, at the time it was made. If then the agent, when he sold the slaves, actually believed that his principal had an absolute title to them, and that the sale would pass a good title to the purchaser, his representation to that effect, although untrue, yet having been made in good faith, would not amount to a fraud, or subject him to any responsibility to the purchaser. The legal effect of the devise of the slaves depended upon the construction of the will; and if the agent honestly believed the representation he made in regard to the title to be true, he could not have made it for the purpose of deceiving or defrauding the purchaser. But this was a matter of fact for the jury to determine, and as the will only vests in the devisee a life etate to the slaves, it devolved up-

*Marginal notes:*

CAMPBELL
vs.
HILLMAN.

3. To constitute fraud, it is not only necessary that the representation be untrue, but also that the party making it shall know it to be so at the time when it is made.

4. In an action for a fraud, if the fraud is established, the measure of recovery is, as a general rule, to be ascertained by the injury sustained. The criterion by which the injury, in a case like the present, is to be ascertained, is the difference between the value

CAMPBELL
*vs.*
HILLMAN.

of the estate
purchased and
that which he
obtained by the
contract of pur-
chase. Facts
which occur sub-
sequent to the
purchase, which
are calculated
to show more
satisfactorily
what was the
real value of the
estate which the
vendor profess-
ed to sell, may
be given in evi-
dence to show
more clearly the
extent of the
damages to be
assessed.

on the agent to prove that he gave a different con-
struction to it, and in fact believed that it conferred
upon the devisee an absolute title to them, and not a
life estate merely.

2. In an action for a fraud, if the plaintiff succeed,
he is entitled, as a general rule, to recover damages
adequate to the injury he has sustained. The crite-
rion by which the extent of the injury in a case like
the present, should be ascertained and determined is
perfectly obvious. The difference between the value
of the estate which he purchased, and the one that
he actually acquired in the slaves, would ordinarily
constitute the only standard by which the injury he
sustained could be estimated; and if nothing had
occurred subsequent to the purchase, which tended
to demonstrate that justice would not be fully attain-
ed by estimating that difference, by reference to the
actual condition of things at the time of the sale,
then this mode of estimating it should be resorted to.
But it is evident that cases might arise in which this
mode of ascertaining the difference in the value of
the two estates, and thereby determining the extent
of the injury sustained, might work manifest injus-
tice. To illustrate this proposition, let us suppose
the case of a sale of a male slave where the owner
of the life estate and the slave sold are about of the
same age, and the life estate according to all human
probability, will continue during the lifetime of the
slave, yet nevertheless the tenant for life should die
shortly after the sale was made. The purchaser
would sustain by the fraud, an injury almost equal to
the full value of the slave; and yet, if the difference
in the value of the two estates, to be determined by
reference to the condition of things at the time of the
sale, constitutes the criterion by which the extent of
the injury must be regulated and governed, the dam-
ages recovered would furnish very inadequate redress
for the injury actually sustained. It may be said,
however, that to permit in such a case a recovery by
the purchaser, to the full extent of the injury he has

sustained, would be doing injustice to the owner of the life estate, who could have sold his interest in the slave for its value at the time of the sale. But there is a wide difference between the purchase of a life interest and the purchase of an absolute estate in a slave. The purchaser of the former, by the very nature of his purchase, agrees to risk both the life of the vendor and the life of the slave; the purchaser of the latter agrees to risk the life of the slave only. He might not have been willing to have incurred the double risk, and might have refused to purchase a bare life estate. The law will not compel him to accept and pay for an estate which he did not contract for or purchase, but gives him indemnity for the injury he has actually sustained in consequence of having acquired a less estate than that which was purchased by him.

According to the nature of the thing contracted for, the purchaser, however, agrees to incur the risk of the life of the slave, and if the slave should die before the termination of the life estate, the injury he would actually sustain by the fraud would be merely nominal, because the loss would not be occasioned by his failure to acquire an absolute title to the slave, but would be the result of a risk growing out of the nature of the property, and which every purchaser of such property necessarily assumes.

It is thus fully demonstrated, that the difference in the value of the two estates, without any reference to subsequent events, would in some cases fail to furnish the purchaser with anything like adequate redress for the injury which he had sustained by the wrong, whilst in other cases it would greatly exceed the extent of such injury. Where, then, any subsequent events have occurred, previous to the time of the trial, which will aid in forming a correct estimate of the difference in the value of the two estates at the time of the sale, and thereby tend to manifest the actual extent of the injury the purchaser has sus-

tained, they may be relied upon for that purpose. If, however, the condition of things remains as it was when the sale was made, then from necessity, the difference in the value of the two estates at the time of the sale, estimated according to all the usual probabilities, is the only criterion that can be adopted in order to determine the extent of the injury the purchaser has sustained. But as such estimates, depending, as they must, upon mere conjecture with respect to future events, are, from their very nature, uncertain, they should not be relied upon, when the events upon which they essentially depend, instead of being matters of conjecture merely, have actually occurred, and become known and certain. So far as anything has happened, or any change in the condition of things has occurred, since the sale, which has a bearing upon the relative value of the two estates at that time, and which, if known, would have aided in forming a correct estimate of such value, if made at the time of the sale, should be considered by the jury in determining the amount of damages to which the purchaser is entitled.

The just operation of this principle is exemplified by its application to the facts and circumstances of the present case. The owner of the life estate, whose life was considered so precarious, at the time of the sale, on account of his bad health, that its probable duration was estimated at about two years or a little upwards, was still living when the suit was tried, although more than seven years had then elapsed from the time the purchase was made; and his health had so improved, as to justify the belief, that he might still live for several years longer. Besides, one of the slaves had died in the meantime, and to that extent no substantial injury had occurred or could arise to the purchaser, in consequence of the difference in the value of the two estates, because the estate which he acquired by his purchase did not terminate during the life-time of the slave.

If, therefore, the measure of compensation for the wrong was made to depend upon the apparent difference in the value of the two estates, to be estimated according to the existing condition of things at the time of the sale, without any reference to subsequent events, it is perfectly evident that the damages to·which the purchaser would be entitled under the operation of such a rule, would greatly exceed in the present case the actual injury he has sustained. His right of recovery must be restricted to legal compensation, for the loss actually resulting, and not for that which might have resulted, from the wrong inflicted on him. So far as the means for the ascertainment of this loss have been furnished by events occurring subsequent to the sale, they should be relied on for the purpose, and probability and conjecture should only be resorted to, when all other more certain means fail, or are exhausted.

The difference in the value of the two estates at the time of the sale, constitutes, therefore, the measure of damages in this case. But subsequent events and circumstances, which, from their very nature, are calculated to aid in estimating this difference, and which render certain some important element in the estimate, upon which it is predicated, and without which it would be uncertain and merely conjectural, may be resorted to and proved for that purpose.

The Circuit Court refused to permit the defendant to avail himself of any of the events referred to, which occurred after the sale, and excluded all the testimony which was offered by him for that purpose.

The inquiry before the jury was confined to the difference in the value of the two estates, when estimated according to the actual state of things at the time of the sale, and thus, in effect, making that difference the measure of damages. The decisions given by the Circuit Court in the progress of the trial, with respect to the testimony relating to the meas-

ure of damages, were inconsistent with the principles of this opinion, and are deemed erroneous.

Wherefore, the judgment is reversed and cause remanded for a new trial, and for further proceedings consistent with this opinion.