ALBERT W. JONES

*v.*

FRANK W. FOSTER.

*Opinion filed October 24, 1898.*

1. LIMITATIONS—*neither mortgagor nor mortgagee can interpose statute against the other while relation exists.* The truth of a statement made by a mortgagee to an absent mortgagor to induce the latter to quit-claim, that the former had held title to the property for many years, cannot be sustained by an attempt to prove title in the mortgagee, as against the mortgagor, under the Statute of Limitations.

2. MORTGAGES—*mortgagee may purchase equity of redemption from mortgagor.* A mortgagee has the right to purchase the equity of redemption from the mortgagor, but courts will closely scrutinize the transaction to see that the mortgagor was not overreached.

3. FRAUD—*the complaining party must use due diligence to investigate alleged false statements.* A grantor seeking to set aside his deed on the ground of false representations by the grantee is not entitled

to relief if he has failed to investigate the alleged statements, the falsity of which he could have ascertained by an inspection of documents in his own possession.

4. SAME—*to constitute fraud, false statements must be made with knowledge of their untruth.* To constitute such fraudulent representations as will induce equity to set aside a deed, it must appear not only that the representations were false, but also that the party making them knew at the time that they were untrue.

5. SAME—*fraud and damage must concur to furnish ground for judicial action.* A deed will not be set aside, in equity, for false representations, where it does not appear affirmatively that the complainant has been injured thereby.

6. SAME—*fact that grantor had abandoned property indicates that he did not rely solely on grantee's statements.* The abandonment of incumbered property by the owner for seventeen years, during which time he resided in another State, paying no taxes on the property, nor anything on the mortgage debt, as interest or otherwise, is a circumstance indicating that in quit-claiming to the mortgagee's assignee he did not so much rely upon the latter's statements as to title as upon his own pre-existing belief that he had lost his rights.

7. SAME—*when equity will not set aside deed for false representations.* A quit-claim deed made by a mortgagor who had abandoned the property for seventeen years, to the mortgagee's assignee, upon the latter's representation that the mortgage covering the lots in question and others had been foreclosed, will not be set aside in equity, though it appears that the lots were intentionally omitted from the foreclosure proceedings, where that fact was not known to the assignee, who supposed the omission was a mistake, and where the amount due on the property, for which the mortgagor was liable, equals or exceeds the value of the lots.

APPEAL from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This is a bill, filed by the appellant against the appellee on August 20, 1896, to set aside a deed executed on August 13, 1895, by appellant to appellee, upon the alleged ground that the deed was obtained by false representations. After a demurrer to the bill was overruled, an answer thereto was filed by the appellee, and replication was filed to the answer by the appellant, the complainant in the court below. After a hearing had upon documentary and oral evidence, the circuit court dismissed the bill for want of equity at the complainant's

costs. The present appeal is prosecuted from said decree of dismissal.

The facts, as they appear from the evidence and from a stipulation between the parties, are substantially as follows:

On February 6, 1874, John J. Foster, father of the present appellee, who was the defendant below, had title to lot 3 in section 12, township 41, north, range 13, east of third principal meridian, except a strip four rods wide off the east side thereof, in Cook county; on that day John J. Foster conveyed said lot to Henry M. Payne; Henry M. Payne subdivided the premises, which consisted of about forty acres of land, under the name of Payne's addition to Evanston; Payne then executed a trust deed to Hugh A. White, as trustee, to secure twenty-four notes for $42,650.00, payable to the order of said John J. Foster, due in various amounts in eight months, and one, two, three and four years from that date, bearing different rates of interest, the notes due in three and four years from date bearing interest at the rate of eight per cent per annum for the third and fourth years; the trust deed covered the lots in controversy in this case, which are described as lot 5 in block 3 and lot 6 in block 6 in Payne's addition to Evanston; it was provided in the trust deed, that, upon payment of $325.00 for each lot, certain lots should be released including one of the lots in controversy, and on the payment of $231.00 for each lot, certain other lots should be released including the other lot in controversy; the trust deed further provided that, if Payne sold or deeded any of the lots, they should be deeded subject to the amount or portion of encumbrance on each lot, which the purchaser should assume or agree to pay; and that the owner of the indebtedness might pay the taxes, and the amount so paid should be considered so much additional secured indebtedness to draw interest at the rate of ten per cent per annum; on June 3, 1874, Payne conveyed to Harrison C. Jones, for

$900.00, said two lots described in the bill, and conveyed by the deed from appellant to appellee, subject to an encumbrance of $325.00 on lot 5 and of $231.00 on lot 6, the payment of which the said Harrison C. Jones assumed; Harrison C. Jones conveyed said lots 5 and 6 to the appellant, Albert W. Jones, on February 23, 1876, for $1000.00, subject to an encumbrance of $162.50 on lot 5 and of $115.50 on lot 6, which the said appellant, Albert W. Jones, assumed and agreed to pay, as part of the purchase money; Payne having made default in the payment of interest and principal, Hugh A. White, under the power contained in said trust deed, made sale to said John J. Foster, on May 13, 1876, of a large part of the property originally conveyed to Payne, but did not include in such sale said lots 5 and 6 here in controversy; White executed a trustee's deed to John J. Foster of the premises sold, but said lots 5 and 6 were not conveyed by said trustee's deed; the property sold was sold for $8600.00, being the amount bid by said Foster; Henry M. Payne, the original mortgagor, and Hugh A. White, the trustee, died before August 1, 1895; no proceedings were ever had in court to foreclose said trust deed, and no other proceedings were taken for that purpose, except the sale under the trust deed as above stated; there has been no release recorded, executed by anybody, releasing said lots 5 and 6 from the lien of said trust deed; there are no other encumbrances on said lots except said trust deed; said lot 6 was, sold for taxes in 1890, and the east half thereof for taxes in 1892; the general and special taxes on the lots were paid by John J. Foster and Frank W. Foster from 1876 to the day of filing the bill herein, with the exception of one or two years, and the total amount of taxes so paid by them is $220.57.

On March 18, 1876, at Chicago a receipt, signed as follows: "John J. Foster, by Hugh A. White, his attorney," was executed and delivered to the appellant, which is in the words and figures following, to-wit: "Received from

A. W. Jones one hundred and sixty-eight 19-100 dollars, being 2 payments of interest and principal due on lot 5 block 3, and lot 6 block 6 in Payne's addition to Evanston, leaving 2 more payments of $139 and interest (each), due in 1 and 2 years from February 6, 1876. This receipt being given on special agreement not to extend to any other party or parties."

On September 15, 1876, the appellant paid $5.84 for the taxes due upon said lots for the year 1875; but the appellant does not appear to have paid any taxes since September 15, 1876.

On August 1, 1895, a lawyer named W. H. Pope, acting as attorney for the appellee, Frank W. Foster, wrote to the appellant, then at Greenfield, Massachusetts, the following letter: "Enclosed is a quit-claim deed to some lots in Evanston, Ill., that you owned in 1875 or '76. Mr. Foster has had title to and possession of them since 1876, when he foreclosed a trust deed on these lots and other property, given by Henry M. Payne, but I find, on examining the title, a technical defect in the foreclosure of said trust deed, which will necessitate him going into the courts to remedy, unless he can secure a quit-claim deed from you. He will give you $5.00 for your trouble in executing the deed. If you have a wife, have her execute the deed with you. Please answer at once, and if you will execute it, I will send on the money."

On August 7, 1895, the appellant at Greenfield, Massachusetts, wrote and sent to W. H. Pope at Chicago the following answer to the above letter: "Yours of the 1st inst. with quit-claim deed to Evanston lots received. If you will send me $10.00 I will execute and return the deed. I put about $200.00 into these lots that I never received anything for, and I think you can well afford to pay me $10.00 for a quit-claim deed."

On August 10, 1895, Pope sent from Chicago the following answer to said letter of August 7, 1895: "Your favor of the 7th was duly received. In reply, will say

that Mr. Foster is willing to do what is right, and inclosed please find draft on New York for $10.00. If you are married have your wife execute and acknowledge the deed jointly with you before a notary public. I enclose envelope for you to return deed in."

On August 13, 1895, the appellant wrote to Pope from Greenfield, Massachusetts, the following letter: "Yours of 10th received with draft for $10.00. Enclosed please find quit-claim deed of Evanston lots as agreed. What is the present value of these lots? I have a curiosity to know whether they have advanced more than Englewood lots in the vicinity of Fifty-eighth street and Wallace street."

On August 20, 1895, Pope answered said letter last above named as follows: "Your favor of August 13th, with deed enclosed, was duly received. The present value of the lots in question is about $500.00 each. I do not think you lost anything by letting them go at the time you did. That property has not increased in value to amount to anything in the last twenty years."

John J. Foster and wife executed to appellee, Frank W. Foster, a quit-claim deed dated August 3, 1895, conveying their interest in said lots 5 and 6.

W. P. FENNELL, for appellant.

HOMER COOKE, and WILLIAM H. POPE, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The false representations, alleged to have been made by the appellee to the appellant to procure from the latter the deed executed by him conveying the lots in question, are embodied in the letter, written by Pope to the appellant on August 1, 1895. It cannot be denied, that the statements made in this letter were incorrect, if not untrue. The impression, conveyed by the first sentence of the letter, is that the appellant owned the lots in 1875

or 1876, but did not own them on August 1, 1895, when the letter was written. As matter of fact, however, the appellant was, at the time of the writing of said letter, the owner of the said lots, subject to the encumbrances thereon. When White, the trustee, on May 13, 1876, sold the property conveyed to him by the trust deed, executed by Henry M. Payne, under the power contained in said trust deed, he did not sell lots 5 and 6 here in controversy. As to these lots, there was never a foreclosure of the trust deed, and, therefore, John J. Foster, the purchaser at the trustee's sale, obtained no title thereto. It follows, of course, that the appellee, who holds by quit-claim deed from his father, John J. Foster, obtained no title thereto, except that which his father had, namely, the title of a mortgagee. In other words, the quit-claim deed from John J. Foster to the appellee amounted only to an assignment of the mortgage to appellee.

The statement in the letter, that, in 1876, Foster foreclosed a trust deed on these lots and other property, given by Henry M. Payne, is not true, if thereby it was intended to be said, that the foreclosure embraced these lots, and not merely that the trust deed covered these lots. The technical defect in the foreclosure of the trust deed, which is referred to in the letter, was the omission of the trustee to sell lots 5 and 6 at all, or to convey them by the trustee's deed which he executed. The statement in the letter, that Foster has had title to the lands since 1876 is also incorrect, except so far as his title was that of a mortgagee in possession.

Some testimony was introduced by the appellee with a view of showing title under the twenty years' and seven years' limitation laws. But, as the relation of mortgagee and mortgagor existed between Foster and appellant, such limitation laws have no application. While the relation of mortgagee and mortgagor continues, neither party in possession can interpose the Statute of Limitations as a defense against the other. The statute can

only commence to run after that relation has been terminated in some of the modes known to the law. (*Norris* v. *Ile,* 152 Ill. 190). Inasmuch as the receipt of March 18, 1876, extended further payment upon the mortgage for one and two years from February 6, 1876, twenty years had not elapsed from the date of the first extension, to-wit, February 6, 1877, up to the time of the filing of the present bill, which was on August 20, 1896, even if the statute of limitations in regard to a possession of twenty years can be held to apply.

The appellant testifies, that he believed the statements in the letter of August 1, 1895, to be true, and executed the deed because he believed them to be true. It appears from the testimony, that neither Pope, nor the appellee, knew of the existence of the receipt dated March 18, 1876. Their testimony is to the effect, that they supposed that White, the trustee, had by mistake omitted to sell the lots in question, as the trust deed covered so many lots. They knew nothing of the existence of the receipt until the deposition of the appellant was taken, and the receipt was attached thereto as an exhibit. The receipt shows clearly, that White did not sell these lots at the trustee's sale, because on March 18, 1876, he had extended the balance due upon the encumbrance until February 6, 1877, and February 6, 1878. Counsel for appellee suggest that White, the trustee, had no authority to grant such extension, but there is no evidence of want of authority, and it is not necessary for us to consider that question. It may be assumed that, as he was the trustee, appointed by John J. Foster in the trust deed to secure the indebtedness, which was owned by John J. Foster, he had a right to represent the beneficiary in the trust deed in the matter of the extension.

It is true that, when a mortgagee acquires an equity of redemption from the mortgagor, equity will scrutinize the transaction with jealous care to see that the mortgagor has not been oppressively or otherwise improperly

dealt with. But while it is true, that a court of equity will look closely into such a transaction to prevent the debtor from being overreached, it is nevertheless true that the mortgagee has a right to buy of the mortgagor the equity of redemption. (*Scanlan* v. *Scanlan*, 134 Ill. 630; *Conant* v. *Riseborough*, 139 id. 383). Although the case is somewhat close upon the facts, yet, after a careful consideration of all the circumstances, we have come to the conclusion, that no such fraudulent representations were made by the appellee, as would justify a court of equity in setting aside the deed.

In the first place, the appellant did not exercise due diligence to inform himself as to the correctness of the statements made in the letter of August 1, 1895, of which he complains. If that letter stated, that lots 5 and 6 were foreclosed in 1876, he had in his possession the receipt of March 18, 1876, which showed that such foreclosure could not have properly taken place, in view of the extension granted to him by the terms of the receipt. He neglected to examine the receipt in connection with the letter, although, when he received the letter, he had the receipt in his possession. In *Douglass* v. *Littler*, 58 Ill. 342, where the owner of a tax title wrote a letter to a distant owner of the paramount title, and thereby obtained a deed from him, it was said that the owner of the paramount title might, by taking a little time for examination and inquiry, have discovered the defects which he afterwards complained of, and that he was guilty of very great negligence and inattention to his own interests in not making any investigation into the defects claimed to exist in the tax title. In that case the following statement from Kent's Commentaries was quoted with approval: "The common law affords to every one reasonable protection against fraud in dealing, but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of infor-

mation." In *Schwabacker* v. *Riddle*, 99 Ill. 343, it was held that, in an action for deceit on account of alleged fraudulent misrepresentations in the sale of property, no recovery can be had, unless the plaintiff himself exercises ordinary prudence and care against the deception and fraud practiced upon him.

In the second place, the facts show that appellant had long years before the letter of August 1, 1895, was written, abandoned this property, and left the State of Illinois. He never paid anything upon the encumbrance upon the property after March 18, 1876, and never paid any taxes thereon after September, 1876. On the contrary, he left the State of Illinois in 1878, and paid no further attention to the property, evidently regarding it as not worth the amount of the encumbrance then existing upon it. He knew, when he left Illinois in 1878, seventeen years before he received the letter of August 1, 1895, asking him for a deed, that, when he abandoned the property, there was an encumbrance upon it. He must have known, that a neglect for seventeen years to pay any principal or interest upon the encumbrance would naturally lead to some steps on the part of the owner of the indebtedness to secure a foreclosure thereof. The correspondence shows, that the appellant regarded his interest in the land as worth little, because of its small value as compared with the encumbrance upon it, and that the real inducement to the execution of the deed, asked for by the appellee, was his own conviction of the small value of his interest, as indicated by his conduct in abandoning the property seventeen years before. In *Douglass* v. *Littler, supra,* such abandonment was regarded as a circumstance, going to show that the party, claiming to be defrauded, did not so much rely upon the representations made to him, as upon the pre-existing belief that he had lost his interest in another way and by other means.

In the third place, it is well settled that, in order to constitute such a fraudulent representation as will induce

a court of equity to set aside an executed deed, it must not only appear that the representations are untrue, but also that the party, making them, knew them to be untrue at the time of making them. (*Tone* v. *Wilson*, 81 Ill. 529; *Schwabacker* v. *Riddle, supra; Grier* v. *Puterbaugh*, 108 Ill. 602; *Campbell* v. *Hillman*, 54 Ky. 508; *Sitt* v. *Little*, 63 N. Y. 427; *Bayard* v. *Holmes*, 34 N. J. L. 296).

We are satisfied from the evidence, that neither the appellee nor his attorney, at the time the letter of August 1, 1895, was written, knew anything about the extension which had been granted by the terms of the receipt of March 18, 1876. It does not appear, that they knew that an attempt was not made to foreclose the mortgage against these lots, as well as against the rest of the property, in May, 1876. So far, therefore, as the representations in the letter appear to have been false in view of the receipt of March 18, 1876, it cannot be said that such representations were known to be untrue at the time of making them.

But, in the fourth place, it is a well settled principle in regard to false representations, that fraud without damage is neither sufficient to support an action at law, nor a ground for relief in equity. Fraud and injury must concur to furnish a ground for judicial action. In an action for fraudulent representations, the plaintiff must not only show, that the representations were made, and that they were false and fraudulent, but he must also show affirmatively that he has been injured thereby. (3 Wait's Actions and Defenses, pp. 442, 453; *Bartlett* v. *Blaine*, 83 Ill. 25; *Werden* v. *Graham*, 107 id. 169; *Nye* v. *Merriam*, 35 Vt. 438; *Freeman* v. *McDaniel*, 23 Ga. 354; *Taylor* v. *Guest*, 58 N. Y. 262; *Hanson* v. *Edgerly*, 29 N. H. 343). If this principle be applied to the facts of the case, it can not be said that the appellant suffered any injury from the representations made to him in the letter of August 1, 1895, even if such representations were false. This will appear from the following considerations:

When the appellant purchased these lots from Harrison C. Jones, he assumed and agreed to pay the proportionate parts of the encumbrance represented by the trust deed, which rested upon these particular lots. He, therefore, occupied the same position, so far as his obligation to discharge these parts of the encumbrance was concerned, as the original mortgagor occupied in relation to the same. Where a conveyance is made subject to a mortgage upon the premises, the payment of which the grantee by the terms of the deed assumes, he thereby becomes personally liable for the mortgage debt. It has been held that, where a deed poll, which recites that it is subject to certain encumbrances on the property, and that the party of the second part thereto assumes and agrees to pay such encumbrances and liabilities, is accepted by the grantee, he is liable in an action of assumpsit to pay the encumbrances therein mentioned. (*Schmidt* v. *Glade*, 126 Ill. 485; *Fish* v. *Glover*, 154 id. 86; *Bay* v. *Williams*, 112 id. 91; *Dean* v. *Walker*, 107 id. 540; 8 Wait's Actions and Defenses, p. 497). This being so, the debt represented by the mortgage upon the lots was a debt due to the mortgagee as much from the appellant, as from the original mortgagor, Payne. The testimony shows, that, in 1878, about four years after the mortgage or trust deed was executed, appellant left the State of Illinois, and has ever since that time been a non-resident of the State. Section 18 of the Limitation act provides that if, after the cause of action accrues against a person, he departs from and resides out of the State, the time of his absence is no part of the time limited for the commencement of the action. (*Pells* v. *Snell*, 130 Ill. 379). Section 11 of the Limitation act provides, that no person shall commence an action, or make a sale, to foreclose any mortgage or deed of trust in the nature of a mortgage, unless within ten years after the right of action or right to make such sale accrues. We have held, that said section 18, providing for the deduction of the time of the

absence from the State of a debtor departing after the right of action accrues, applies to a suit to foreclose a mortgage, the mortgage being a mere incident of the debt and being barred when the debt is barred. (*Hibernian Banking Ass.* v. *Commercial Nat. Bank*, 157 Ill. 524). It is, therefore, evident that the right to foreclose the encumbrance resting upon these lots has not been barred as against appellant. Only four years of the ten years, which the mortgage had to run, had passed in 1878 when appellant ceased to be a resident of Illinois. If the period of his absence be deducted, the bar of ten years cannot be successfully pleaded to an action to foreclose the mortgage. The testimony in the case shows, that these lots are worth only about $1000.00. The testimony also shows, that the whole amount due upon the encumbrance upon the lots, including principal and interest and taxes paid by the mortgagees and interest upon such payments of taxes, amounts to at least $1000.00. The encumbrance upon the lots being as much in amount as the lots are worth, the appellant suffered no injury by the representations made to him. He was offered $5.00 for a quit-claim deed. He declined the offer, and himself proposed to receive $10.00 for a deed. The $10.00 were paid to him. Before he can derive any benefit from this land, or receive any title thereto which will be a substantial benefit to him, he must pay off an encumbrance amounting to the full value of the land. In view of this state of things, it cannot be said that fraud and injury concur in this case. In other words, the appellant has not shown affirmatively, that he has been injured by the representations which he charges to have been falsely made to him.

In view of the considerations thus presented, we are inclined to the opinion that the circuit court committed no error in dismissing the bill. Accordingly, the decree of the circuit court is affirmed.          *Decree affirmed.*