(No. 18765.—

CHARLES L. MOREL *et al.* Appellants, *vs.* ALEX MASALSKI *et al.* Appellees.

*Opinion filed December 20, 1928.*

LEFKOW & LEFKOW, for appellants.

SLAKIS & SPENCE, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellants, Charles L. Morel and Daisey E. Morel, his wife, filed their bill for relief in the circuit court of Cook county against appellees, Alex Masalski and Josephine Masalski, his wife. A demurrer was sustained to the bill as amended, it was dismissed for want of equity, and an appeal has been prosecuted to this court.

The amended bill alleged that appellees were the owners of an apartment building in Chicago. On September 15, 1925, they entered into a written contract with appellants for its sale for $47,000, of which $13,000 was paid when the contract was signed, $2000 was to be paid May 1, 1926, a trust deed for $20,000 due in five years was to be executed to the Chicago Title and Trust Company as trustee, a second mortgage for the unpaid balance was to be executed to Bessie Zacharewicz as trustee, payable at the rate of $125 a

month, with interest at six per cent, payable monthly. On September 15, 1925, appellees executed a warranty deed to appellants, which was placed in escrow until appellants complied with the provisions of the contract. On May 7, 1926, appellants complied with the contract and the deed was delivered to them and filed for record the next day.

The bill alleged that prior to the signing of the contract appellees told appellants that appellees had applied to the board of review of Cook county for a reduction of the general taxes on the property and the board of review had reduced the taxes to approximately $411.60 per annum, and the taxes for 1925 and ensuing year would be approximately that amount, which was made the basis for prorating the tax between the parties; that appellees delivered to appellants a written contract, in which they agreed that in case the taxes for 1925 were more than $411.60 they would refund to appellants the *pro rata* difference between that amount and what the taxes for 1925 actually were; that prior to the execution of the contract appellants investigated the income from the property and the various expenses of maintenance, and found that the income would cover the maintenance, including interest, monthly payments on the second mortgage, and general taxes, provided the taxes were not larger than represented by appellees; that at the time the contract was executed the general tax bills for 1925 had not been issued but appellants took the statements of appellees to be true, and, acting upon such statements, entered into the contract; that the income from the premises is insufficient to cover the expense of maintenance if the taxes for any one year are greater than approximately $411.60; that appellants would not have entered into the contract had they known that the taxes were greater in any one year than said amount; that the tax bill for 1925, when issued, showed a valuation of $4900 and a tax of $443, which appellants paid; that the tax bill for 1926 was issued on April 20, 1927, and showed a valuation of $9900 and a tax of $919;

that after the tax bill for 1926 was issued appellants caused an investigation to be made of the records of the board of assessors and the board of review and found that no reduction in taxes had been made, but the record showed that appellees, in connivance and conspiracy with some other persons to appellants unknown, caused the $9900 assessment in the assessor's books to be fraudulently and unlawfully changed in the county collector's warranty book to $4900, which change was made for the purpose of causing the general tax bill for 1925 to be made from the figures appearing in the collector's warranty book, thus making the taxes for 1925 in an amount approximately as stated by appellees; that appellees well knew prior to the sale that the premises could only be maintained at a loss if taxes had to be paid upon a valuation of $9900; that the fraudulent representations of appellees were made for the purpose of concealing the true cost and expense of maintaining the premises and to induce appellants to enter into a contract which they otherwise would not have entered into, to their great injury and damage; that appellants are unable to pay the additional amount of taxes for 1926 and meet other payments for interest which are now due; that the premises will be subject to tax sale or foreclosure, in either of which events appellants will be put to great expense and irreparable loss and damage; that they are advised that they will be called upon to pay the difference between the $443 paid by them upon the fraudulent tax bill of 1925 and the amount of the true tax upon the premises, and suit therefor is about to be entered against them; that in order to make the cash payment of $2000 due on May 1, 1926, appellants offered for sale a bungalow owned by them, and they were obliged to sell it for $1000 less than they could have obtained from another party; that they accepted this offer for the sole purpose of realizing the $2000 cash payment to be made under their contract with appellees; that by reason thereof they have sustained a loss of $1000 upon the bungalow

which they otherwise would not have sustained; that since discovering the fraud they have offered to rescind the contract, restore the premises to appellees, account for all money received, and in all things to place appellees *in statu quo* if they will do likewise, as in justice and equity they should do; that they refuse so to do and threaten to institute foreclosure proceedings for the interest due, which appellants are unable to pay.

The bill made the two appellees parties defendant, together with the Chicago Title and Trust Company, trustee, and Bessie Zacharewicz, trustee, and prayed that the contract, the warranty deed, the deeds of trust to the two trustees, together with all notes and other evidence of indebtedness and all documents pertaining thereto, be set aside and declared null and void; that an account be taken, and appellees be restrained by injunction from instituting any proceeding to foreclose the mortgage until the further order of the court.

It is insisted by appellants that the amended bill stated a cause of action; that they were induced to purchase the property upon fraudulent representations, to their injury; that they have offered to rescind the contract and are entitled to equitable relief; that one who is guilty of fraud cannot excuse himself by saying that the injured party was negligent; that they had no opportunity to ascertain the amount for which the property was assessed, for the reason that they did not have access to the assessor's books; that misrepresentations, even though innocently made, may constitute fraud, and if a party acting thereon is injured he may have equitable relief. Appellees insist that a person cannot rescind a contract which he was induced to execute by representations made to him, however false and fraudulent, where such representations relate to a matter of law of which one party is presumed to know as much as the other; that in order to entitle a person to rescind a contract upon the

ground of fraud, the party seeking to rescind must be justified in relying on the representations made; that matters of opinion, although false, do not constitute fraud; that equity will not afford relief where the parties have ample opportunity to ascertain the truth of a representation before they act; that equity will not rescind a contract where the law affords the party injured an adequate and complete remedy.

As a general rule, when a false representation of a material fact is made, and a party, in ignorance of the truth, relies upon such false representation and is induced thereby to enter into a contract to his injury, such representation will avoid the contract, and when the injured party in apt time offers to rescind the contract and invokes the aid of a court of equity, relief will be granted and the parties restored to their original status. (*Baker* v. *Rockabrand,* 118 Ill. 365; *Mitchell* v. *McDougall,* 62 id. 500.) The general rule is that a party guilty of fraudulent representations will not be permitted to charge negligence of the other party. Even where the parties are dealing at arm's length, if one of them makes to the other a positive statement, upon which the other acts in confidence of its truth, and such statement is known to be false by the party making it, such conduct is fraudulent and from it the party guilty of fraud can take no benefit. (*Herpich* v. *Williams,* 300 Ill. 540; *Gilbey* v. *Hamlin,* 297 id. 258; *Leonard* v. *Springer,* 197 id. 532; *Linington* v. *Strong,* 107 id. 295.) These general rules, however, have some limitations. In all cases where it is sought to hold one liable for false representations the question necessarily arises whether, under all the circumstances, the party seeking relief had a right to rely upon the representations made. In determining this question the representations must be viewed in the light of all the facts of which the party injured had actual knowledge and also such as he might have availed himself of by the exercise of ordinary prudence. If it appears that there were facts and circumstances present at the time the false representations

were made sufficient to put the injured party upon his guard or to cast suspicion upon their truth, and he neglected to avail himself of the warning thus given, he will not afterwards be heard to complain, for the reason that his own conduct contributed to his injury. Ordinarily one is not liable for false representations respecting a mere question of law. (*Dillman* v. *Nadlehoffer,* 119 Ill. 567.) A person in possession of his mental faculties is not justified in relying upon representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is offered the opportunity of knowing the truth of the representations he is chargeable with knowledge. If he does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by the misrepresentations. (*Dickinson* v. *Dickinson,* 305 Ill. 521; *Hustad* v. *Cerny,* 321 id. 354.) It is only in cases where the parties do not have equal knowledge or means of knowledge of the facts represented that equity will afford relief on the ground of fraud and misrepresentation. *Johnson* v. *Miller,* 299 Ill. 276.

The contract was entered into on September 25, 1925, and it was not fully consummated until May 7, 1926. Appellants had over seven months in which to inform themselves as to the assessed value, but they did not avail themselves of this opportunity. They insist that under the law they had no right or opportunity to ascertain from the books of the assessing bodies just for what the property was assessed. In support of this contention they cite section 338 of chapter 120. (Cahill's Stat. 1927, p. 2128.) The statute does not sustain this contention. Under that section it is the duty of the chief clerk of the board of assessors, on request, to deliver to any person a statement of property assessed in his name or in which he is interested and the valuation placed thereon by the assessor or the board of review. Appellants were interested in this property and were entitled to a statement as to its assessed value. The assess-

ment was a matter of public record and could be ascertained by appellants. The parties entered into a written contract by which appellees agreed to refund to appellants the *pro rata* difference between $411.60 and what the taxes for 1925 actually were, therefore appellants were protected as far as the taxes of 1925 were concerned. They knew what the tax bill was for 1925 before the deed was delivered to them on May 7, 1926. They had an opportunity to raise the question as to the amount of the tax before the transaction was completed, but they failed to do so. The board of review and board of assessors had the right to change the assessment from year to year. (*People* v. *Keogh,* 306 Ill. 323; *People* v. *St. Louis Bridge Co.* 281 id. 462.) Appellants were charged with knowledge that the board of review had this right, and they were not justified in relying on any statement appellees might have made with reference to what the taxes might be in any year subsequent to the contract. Any representation in that respect would not be a sufficient basis for rescinding the contract. The only cause of complaint appellants had was as to the taxes for the first year, which were covered by the contract between the parties, and they have a right of action against appellees for any difference in the amount of taxes paid as provided in the contract, which difference was not sufficient to avoid the contract of sale.

The bill did not state a cause of action, the demurrer was properly sustained, and the decree will be affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*