Lloyd W. Broberg, Plaintiff-Appellee, v. Charles H. Mann, Defendant-Appellant.

Gen. No. 65–54.

Second District.

December 28, 1965.

William L. Lamey and Charles R. Purcell, Jr., both of Chicago, for appellant.

North and North, of Rockford, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The defendant, Charles H. Mann, prosecutes this appeal from a judgment entered by the trial court at a bench trial, in favor of the plaintiff, Lloyd W. Broberg, in the sum of $6,000. The genesis of this litigation was the plaintiff's purchase of certain land from defendant which plaintiff believed to contain approximately 26 acres, and which, in fact, contained only 18 acres.

The complaint alleged that the defendant represented to the plaintiff that the land in question contained approximately 26 acres, and that the defendant "well knew

that the land described in the said deed of conveyance to the plaintiff and his wife was not in quantity the twenty-six acres of land as bargained for and paid for by plaintiff, and that the defendant by trick and device of substituting a new description by metes and bounds on the day that the deal was closed in the office of defendant's attorney and by fraudulently and falsely secreting and failing to inform the plaintiff or his attorney of the fact that the land described in the substituted description was not in fact and did not describe land in quantity of approximately twenty-six acres." It asserted that the plaintiff had been "damaged to the value of the shortage of eight acres unconveyed to him by defendant."

The defendant contends that the gravamen of plaintiff's complaint is an action for fraud and deceit; that the elements necessary to establish fraud and deceit have not been proven; and that the plaintiff may not in this court assert a right to recovery based upon mutual mistake. The plaintiff concedes in his brief that this is an action for fraud but states that whether he proved actual or active fraud, or mutual mistake, makes no difference in that under the circumstances of this case mutual mistake constitutes legal fraud warranting relief.

■ The plaintiff's case must stand or fall upon the fraud and deceit charged. The issues in this litigation, as in all cases, are determined from the pleadings and evidence; and an issue cannot be sustained by evidence, absent a corresponding pleading, or by a pleading, without supporting evidence. Burke v. Burke, 12 Ill2d 483, 487, 147 NE2d 373 (1958); Consoer, Townsend & Associates v. Addis, 37 Ill App2d 105, 110, 185 NE2d 97 (1st Dist 1962). In Seaburg v. Williams, 23 Ill App2d 25, 161 NE2d 576 (2nd Dist 1959), at page 30, the Court stated:

"In Fornoff v. Smith, 281 Ill App 232, it was said, 'It is a fundamental rule, with no exceptions, that a party must recover, if at all, on and according to

the case he has made for himself by his pleadings. He cannot make one case by his averments, and have judgment on another and different ground, even though the latter is established by the proof. Feder v. Midland Casualty Co., 316 Ill 552; Moss v. Johnson, 22 Ill 633; Lake St. El. R. Co. v. Shaw, 203 Ill 39.' "

■ Likewise, a party may not try a case upon one theory and then present to the court on appeal, for the first time, another and different theory. Benson v. Isaacs, 22 Ill2d 606, 610, 177 NE2d 209 (1961); Consoer Townsend & Associates v. Addis, supra, 109; Continental Ill. Nat. Bank & Trust Co. of Chicago v. National Casket Co., 27 Ill App2d 447, 450, 169 NE2d 853 (1st Dist 1960). The reasons for prohibiting upon review, a change of the theory upon which a case has been tried, are apparent. The proof presented is determined largely by the pleadings, the issues, and the theories there made. To permit a recovery upon a theory which was neither pleaded nor presented below, would preclude the adverse party from presenting evidence in rebuttal thereof and from offering other further or attendant theories predicated thereon. Such procedure would violate the concept of fundamental fairness embraced in our Civil Practice Act, wherein the Legislature sought to liberalize the framework within which disputes are presented to the end that they may be determined on their merits upon a specification of the real issues involved. Fleshner v. Copeland, 13 Ill2d 72, 77, 147 NE2d 329 (1958).

■■ In this regard, section 46 of the Civil Practice Act (Ill Rev Stats 1965, c 110, Par 46) contains liberal provisions relative to the amendment of pleadings. So long as no prejudice will result to the adverse party, pleadings may even be amended in this court. App Ct Rule 26 (Ill Rev Stats 1965, c 110, Par 201.26). No amendment was here sought. Obviously, in this case a change in theory at this state of the litigation would

prejudice the adverse party. Consequently, this action must be considered in this court as an action charging fraudulent misrepresentations by defendant wherein damages are sought by plaintiff.

█ Comprehensively stated, a misrepresentation to be the basis of a charge of fraud, either in a suit at law or in equity, must contain the following elements:

(1) It must be a statement of material fact, as opposed to opinion;
(2) it must be untrue;
(3) the party making the statement must know or believe it to be untrue;
(4) the person to whom the statement is made must believe and rely on it, and have a right to do so;
(5) it must have been made for the purpose of inducing the other party to act; and
(6) the reliance by the person to whom the statement is made must lead to his injury.

Bennett v. Hodge, 374 Ill 326, 332, 29 NE2d 524 (1940); Jones v. Foster, 175 Ill 459, 468, 469, 51 NE 862 (1898); 3700 S. Kedzie Bldg. Corp. v. Chicago Steel Foundry Co., 20 Ill App2d 483, 487, 488, 156 NE2d 618 (1st Dist 1959); 37 CJS, Fraud, § 3, p 215.

█ It is essential to the establishment of fraud that the person charged must either have knowledge of the falsity of his statement and, hence, an intent to deceive the other party (Jones v. Foster, supra; Lickus v. O'Donnell, 321 Ill App 144, 148, 52 NE2d 271 (2nd Dist 1943); 19 ILP, Fraud, §§ 4, 10) or must make the false representations in culpable ignorance of their truth or falsity. Brennan v. Persselli, 353 Ill 630, 635, 187 NE 820 (1933). The state of mind and intent of the party charged with fraud is fraudulent if it "includes anything calculated to deceive." Majewski v. Gallina, 17 Ill 2d 92, 99 160 NE2d 783 (1959); People v. Gilmore, 345 Ill 28, 46, 177 NE 710 (1931); People ex rel. Karr

139

v. Weihe, 30 Ill App2d 361, 372, 174 NE2d 897 (2nd Dist 1961). The presence or absence of the requisite knowledge and intent to establish fraud may be determined from the evidence and the circumstances surrounding the transaction. Tate v. Jackson, 22 Ill App2d 471, 476, 161 NE2d 156 (4th Dist 1959).

██ ██ The requisite knowledge and intent may also be imputed to a person if the circumstances otherwise warrant a presumption of fraud. See Wadhams v. Swan, 109 Ill 46, 56, 57, incl. (1884). Such a "presumption" is no more than an inference however, which may be explained away. In Barrett v. Shanks, 382 Ill 434, 47 NE2d 481 (1943), at page 440, the court, in speaking of fraud and the general rule that it will not be established by presumptions stated: "It may be proved by circumstances but it is not thereby established unless the circumstances proved are so strong as to produce a conviction that the charge of fraud is true."

In Bundesen v. Lewis, 368 Ill 623, 15 NE2d 520 (1938), the court, in announcing the general rule as to presumptions in a case charging fraud, stated at 632:

"Rules governing transactions of this character have frequently been announced by this court. In Weininger v. Metropolitan Fire Ins. Co. 359 Ill 584, it was said: 'The presumption very properly is that all men are honest. Where fraud is charged it must affirmatively be proved by clear and convincing testimony. It cannot be established upon mere suspicion.' The burden is upon the one alleging fraud to prove it by 'such clear and convincing evidence that the mind is well satisfied that the charge is true.' This is the rule announced in Jaworski v. Sujewicz, 334 Ill 19; also Schiavone v. Ashton, 332 id. 484; Mosbarger v. Brown, 313 id. 238; Carter v. Carter, 283 id. 324."

██ As a general rule, a person who is guilty of fraudulent misrepresentation cannot interpose a defense

140

that the person defrauded was negligent in failing to discover the truth. This rule is subject to the qualification, however, that the person asserting that he acted to his detriment in reliance upon a fraudulent misrepresentation must establish his right to rely thereon. He may not enter into a transaction, closing his eyes to available information, and then charge that he has been deceived by the words or conduct of the other party.

 The right of a person to rely upon the representations made to him depends upon all the circumstances surrounding the transaction. If, by the exercise of ordinary prudence, he had ample opportunity to determine the truth of the representations before acting, but failed to so do, he is charged with knowledge and may not then be heard to say that his loss was due to the deceit of another. It is only where the parties do not have equal knowledge, or means of knowledge of the facts represented, or there are other peculiar circumstances inducing the one to whom the representations are made, to rely solely thereon, that a person may justifiably rely upon the representations of another. Schmidt v. Landfield, 20 Ill2d 89, 94, 169 NE2d 229 (1960); Bundesen v. Lewis, supra, 633; Morel v. Masalski, 333 Ill 41, 47, 164 NE 205 (1928); Jones v. Foster, 175 Ill 459, 467, 468, 51 NE 862 (1898).

Both the plaintiff and the defendant lived in Chicago, but the plaintiff had a farm background. The land sold was located in Boone County. It was a part of a 248.54-acre farm which the defendant, in December of 1958, acquired from his brother-in-law, who was then in financial trouble. Between December of 1958 and the fall of 1959, the defendant visited the property about once a month. He leased the farm, and in September of 1959 he decided to sell it.

The farm was made up of two parcels, one on the north side of State Highway No. 20 and the other on the south side thereof. The parcel south of the highway was the larger of the parcels, being made up of two tracts

141

containing 130.73 acres and 96.85 acres, respectively. The parcel north of the highway was purchased by the plaintiff. A railroad, running parallel with the highway, bisects this parcel.

When the defendant decided to sell the farm, he placed a sign on the north parcel describing it as containing 26 acres, plus or minus. The defendant had obtained this acreage from computations from a survey of the property made by Homer Yaw in 1914. At the time he purchased the property, he received an abstract which contained this survey. He obtained a photostat of the survey and made a sketch of the property by tracing over the photostat. He stated that the acreage figures on the photostat for the area north of the highway were indistinct and, therefore, he computed that acreage by subtracting the amount of land located south of the highway from the entire acreage of 248.54 acres. In doing so, however, he misread the south 96.85-acre tract as 90.85. Thus, he overstated the land to the north of the highway, as shown by the survey, and understated the amount of land south of the highway by six acres.

It is conceded by defendant that the sign he placed upon the premises stated that the parcel contained 26 acres, plus or minus; that he told the plaintiff that there were approximately 26 acres in the tract; and that the sales contract described the land as ". . . consisting of approximately 26 acres, according to survey of Homer Yaw, made February 26, 1914."

The plaintiff first saw the land in the fall of 1959, and frequently thereafter until March 13, 1960, when he signed the sales contract in the sum of $18,500. He inspected the property on several occasions. The defendant pointed out the fence lines on the east and west boundaries to the plaintiff, who thus knew that a gasoline station and garage was located immediately west of the west line of the tract north of the highway and south of the railroad.

The sketch furnished by the defendant to the plaintiff indicated that the parcel of land north of the highway contained 26.18 acres. However, prior to the closing of the sale and the delivery of deed, the photostat of the survey was furnished to plaintiff's attorney, who examined it and forwarded it to the plaintiff. This photostat of the Homer Yaw survey showed four tracts of land north of the highway. Two of these appear to be a part of the 248.54-acre farm—consisting of a tract of land north of the railroad approximately 1330 feet in length, containing 8.44 acres, and a tract of land south of the railroad and north of the highway approximately 864 feet in length, containing 12.52 acres. These tracts total 20.96 acres. The other two tracts also south of the railroad and north of the highway, consist of 4 acres and 1.22 acres, respectively. The name "Theron M. Sears" appears on the 4-acre tract and that of "H. O. Sears" on the 1.22-acre tract. These four parcels total 26.18 acres.

The attorney for the plaintiff testified that he did not discover the discrepancy in acreage in that he assumed that all four tracts were to be conveyed to the plaintiff. However, the defendant at no time owned the latter two tracts mentioned, which were separated from his property by a fence and were improved with a gasoline station and garage. It is significant that defendant's attorney forwarded to plaintiff's attorney, prior to the closing, the title company preliminary report of title, together with the photostat of the survey and a letter of transmittal reciting the enclosure of such instruments "which will enable you to confirm the legal description." The deed, which was ultimately given, conveyed the property in gross, and neither the preliminary report of title nor the deed contained any reference to acreage—approximate or otherwise. However, even a cursory examination of the legal descriptions in the preliminary report and deed, along with reference to the survey, would indicate that only the two tracts were to be conveyed, totalling

143

20.96 acres according to the Yaw survey—not the four tracts, totalling 26.18 acres.

Under the circumstances outlined above, we find that the plaintiff has failed to establish either that he had a right to rely upon defendant's representations as to acreage, or that the defendant had knowledge of the falsity of his representations or intended to deceive the plaintiff.

The defendant's explanations of the manner in which he arrived at the acreage computations are credible, and constitute evidence that he neither had knowledge of the falsity of his representations as to acreage, nor were his statements made in culpable ignorance of the truth. His representations were inaccurate, but not fraudulent. His actions were not "calculated" to deceive the plaintiff. The defendant possessed no superior knowledge of the acreage involved. He furnished to the plaintiff and his attorney, a survey, which, if examined along with the preliminary report of title and the proposed deed, would have clearly indicated that plaintiff was not receiving 26.18 acres.

In Douglass v. Littler, et al., 58 Ill 342 (1871), a case wherein fraud was charged, the court quoted from Kent's Commentaries on this subject, as follows:

> "The common law affords, to every one, reasonable protection against fraud in dealing, but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly, or a careless indifference to the ordinary and accessible means of information." (Vol 2, 646, 11th Ed.)

The plaintiff, either careless or indifferent to the facts pertaining to acreage as shown by a photostatic copy of the survey as attached to the abstract, accepted the deed without ascertaining the acreage from these sources which were available to him. In Bundesen v. Lewis, supra, at page 633, the court aptly stated:

144

"A person in possession of his mental faculties is not justified in relying upon representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is offered the opportunity of knowing the truth of the representations he is chargeable with knowledge. If he does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by the misrepresentations."

Also see Morel v. Masalski, 333 Ill 41, 46, 47, 164 NE 205 (1928).

Under the circumstances of this case, we cannot hold that the evidence of fraud was clear and convincing and that the conduct of the defendant amounted to fraud. Therefore, the decision of the trial court was against the manifest weight of the evidence and the law. Accordingly, the judgment is reversed and judgment is entered here for the defendant.

Judgment reversed.

ABRAHAMSON, P. J. and MORAN, J., concur.