STUART D. PERLMAN, Plaintiff-Appellant, *v.* TIME, INCORPORATED, Defendant-Appellee.

First District (5th Division)   No. 77-725

Opinion filed September 8, 1978.

Aram A. Hartunian and Stephen Feinberg, both of Pressman & Hartunian, of Chicago, for appellant.

Kirkland & Ellis, of Chicago (Don H. Reuben, Lawrence Gunnels, and Keith C. McDole, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Stuart D. Perlman appeals from the entry of summary judgment in favor of Time, Inc. (Time), on a four-count complaint which charged Time with common law fraud, unjust enrichment, violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 261 *et seq.*) and breach of contract. On appeal Perlman contends that the trial court erred in (1) granting summary judgment to Time, and (2) denying his own motion for summary judgment.

The following facts pertinent to the disposition of this appeal appear in the record.

In September 1972 Perlman renewed a subscription to LIFE magazine, contracting for delivery of 78 issues and paying in advance a total charge of $11.95, or $.1532 per issue. Time, the publisher of LIFE, subsequently decided on December 7, 1972, to suspend the publication of LIFE due to irreversible financial losses incurred in publishing the magazine. Publication was thereafter suspended, the final issue bearing the cover date of December 29, 1972. Perlman had received 18 of the 78 issues of LIFE for which he had contracted and paid.

Following the suspension, Time offered Perlman his choice of a cash refund for the unfulfilled portion of his LIFE subscription or a substitute subscription to any one of 33 different magazines published both by Time and by other publishers. These choices were explained in a letter which

Perlman received from Garry Valk, publisher of LIFE, subsequent to the suspension. After confirming the suspension, thanking Perlman for his support of LIFE, and announcing that "We still have a commitment to you," the letter stated in pertinent part:

"Naturally we hope that you might want to use the credit remaining in your subscription to enjoy one of our other Time Incorporated publications—TIME, SPORTS ILLUSTRATED, FORTUNE or MONEY (our new monthly magazine of family economics and money management.) Needless to say, we would like to keep you in our family of readers—and so to continue serving you with information and rewarding reading.

You will also find many fine magazines from other publishers on this list of alternatives so that you may have an even greater range of selectivity. If you prefer a refund in cash rather than in kind, we will send it to you promptly. The choice, of course is yours.

Each choice carries a reference number. Simply indicate your preference in the box on the enclosed postpaid reply card. Since there are limited quantities available of some of the alternatives we've listed, I would be grateful if you would mark three choices so that we can send you one of them promptly. All choices, of course, offer you full value for the remaining portion of your LIFE subscription."

Enclosed with this letter was a "selection list," containing 33 different magazines and a cash refund alternative, from which Perlman was asked to select his "three choices—in order of preference—to fulfill the remaining portion of my LIFE subscription." Each magazine choice was briefly described. Perlman, responding to this solicitation, selected TIME magazine, another Time publication, as his first choice, another magazine as his second choice and a cash refund as his final alternative. It was stipulated that had Perlman decided to select a cash refund instead of TIME, he would have been entitled to $9.19, the value of his 60 remaining LIFE issues multiplied by the $.1532 which he had paid for each issue.

Perlman received a total of 43 issues of TIME as a substitute for the 60 issues of LIFE, the TIME subscription commencing in August 1973 and ceasing in June 1974. Perlman wrote to Time on November 18, 1974, contending that "I believe I am entitled to the remaining issues under my original subscription [to LIFE] which, if I am not mistaken, had about 8 months to go." Time replied that the 43 issues of TIME which he had received "represents the full credit for the unfulfilled portion of your LIFE subscription."

After Perlman again claimed that he had not received full credit, Time informed him on February 13, 1975, that the number of TIME issues due in lieu of the LIFE subscription was determined by use of a "basic to

basic" conversion formula promulgated by the Audit Bureau of Circulations (ABC). The ABC is a private nonprofit organization which periodically audits and certifies the circulation of magazines. Time explained to Perlman that the number of issues of TIME which he received had been calculated:

"By dividing the sum of money still due the subscriber at the basic annual subscription price of the discontinued publication by the price per copy of the surviving publication, said per-copy to be a pro rata of the basic annual subscription price of the surviving publication.

Source:

Audit Bureau of Circulation 1972-1973 Bylaws and Rules Chapter B, Article 7, Section 7, Paragraph (d), Sub-Paragraph 1."

The "basic annual subscription price" referred to in the above formula was an amount assigned to the magazine by the publisher. Both TIME and LIFE actually sold at various subscription prices and the "basic" rate was actually the highest price at which subscriptions were sold. The basic annual subscription rate for LIFE was $10 per year or $.192 per issue, while the basic annual subscription price for TIME was $14 per year or $.269 per issue. Using the ABC formula, Time assigned a value of $11.52 to Perlman's remaining 60 issues of LIFE, multiplying the 60 issues by the basic per issue price of $.192. This total credit of $11.52 was then divided by $.269, the basic per issue price assigned to TIME, in order to arrive at the number of substitute issues due. As a result of this computation, it was determined that Perlman was entitled to 43 issues of TIME in fulfillment of the remaining portion of his LIFE subscription.

Perlman thereafter brought an action against Time on his own behalf and on behalf of all others similarly situated, claiming that the solicitation letter was deceitful and that "full value" was not given as promised. The amended complaint alleges common law fraud in count I, unjust enrichment in count II, a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 262) in count III and breach of contract in count IV. Questions pertaining to the propriety of the suit as a class action were not decided by the trial court and are not before us now. Time moved to dismiss the amended complaint and alternatively for the summary judgment. Perlman thereafter filed his motion for summary judgment on the issue of liability. After briefing and argument on the motions, the trial court granted summary judgment in favor of Time on counts I, II and IV. After additional briefing, the trial court also granted summary judgment in favor of Time on count III.

Perlman appeals from the entry of these orders.

OPINION

On appeal Perlman contends that the circuit court erroneously granted summary judgment for defendant because there were unresolved genuine issues of material fact.

■■ Section 57 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57(3)) provides that a motion for summary judgment should be granted where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A triable issue precluding summary judgment exists where there is a dispute as to material facts or where, the material facts being undisputed, reasonable persons might draw different inferences from the facts. (*Ruby v. Wayman* (1968), 99 Ill. App. 2d 146, 240 N.E.2d 699.) In determining whether à genuine issue as to any material fact exists, the court must construe the pleadings, depositions and affidavits most strictly against the movant and most liberally in favor of the opponent. *Baier v. State Farm Insurance Co.* (1975), 28 Ill. App. 3d 917, 329 N.E.2d 543, *aff'd* (1977), 66 Ill. 2d 119, 361 N.E.2d 1100.

Although summary judgment in a proper case benefits both the litigants and the community (see *Allen v. Meyer* (1958), 14 Ill. 2d 284, 152 N.E.2d 576), "it is a remedy to be awarded with some caution so as not to preempt the right to a trial by jury or the right to fully present the factual basis for a case where a material dispute may exist." (*Lumbermens Mutual Casualty Co. v. Poths* (1968), 104 Ill. App. 2d 80, 87, 243 N.E.2d 40, 44-45.) Accordingly, the right to summary judgment must be clear beyond question. *Patterson v. Stern* (1967), 88 Ill. App. 2d 399, 232 N.E.2d 7.

Applying these principles to the present case, we believe that summary judgment was a particularly inappropriate and incorrect remedy.

## AS TO COUNT I

■■ In count I, Perlman seeks to recover on a common law fraud theory, claiming that Time both misrepresented the number of replacement issues he would receive by use of the term "full value" and concealed the "basic to basic" conversion formula which was to be used. In *Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 139, 213 N.E.2d 89, 91-92, the court stated the essential elements of fraudulent misrepresentation:

"(1) It must be a statement of material fact, as opposed to opinion;

(2) it must be untrue;

(3) the party making the statement must know or believe it to be untrue;

(4) the person to whom the statement is made must believe and rely on it, and have a right to do so;

(5) it must have been made for the purpose of inducing the other party to act; and

(6) the reliance by the person to whom the statement is made must lead to his injury."

Fraud may also consist of the concealment of an existing material fact when accompanied by scienter, deception and injury. (*Skidmore v. Johnson* (1948), 334 Ill. App. 347, 79 N.E.2d 762.) The concealment, however, may not be a mere passive omission of facts during a business transaction, but must have been done "with the intention to deceive under circumstances creating an opportunity and duty to speak." (*Lagen v. Lagen* (1973), 14 Ill. App. 3d 74, 79, 302 N.E.2d 201, 205.) Although a statement may be technically true, it may nevertheless be fraudulent where it omits qualifying material since "a half-truth is sometimes more misleading than an outright lie." (*St. Joseph Hospital v. Corbetta Construction Co.* (1974), 21 Ill. App. 3d 925, 953, 316 N.E.2d 51, 71.) We believe that a genuine issue remains as to whether Perlman can establish each of the required elements of fraud.

Time contends, however, that Perlman cannot establish the essential elements of falsity and injury. It argues that the statement that Perlman would receive full value was true and that since the 43 issues of TIME actually exceeded the full value of the remaining portion of Perlman's LIFE subscription, he suffered no damage. The parties agree that the remaining value of Perlman's LIFE subscription was $9.19. The question thus becomes whether the 43 issues of TIME were equal to, or in excess of, $9.19 in value. In order to make this determination it is necessary to ascertain the real value of TIME during the relevant period.

Time argues that the value of TIME is obviously the "basic subscription rate" of $.269 per issue. Were this true, the 43 issues of TIME would have a value of approximately $11.58, and Perlman would have clearly received the full value due him. However, the establishment of a "basic subscription rate" by its publisher is not necessarily conclusive as to the real value of a magazine. Although Time argues that a substantial number of subscribers paid the basic rate, the record is replete with evidence that only a minority of TIME subscribers paid the so called "basic subscription rate." Various other subscription programs were offered at substantially lower rates, ranging from approximately $.14 to approximately $.23 per issue. Although some of these lower rates were offered only to special classes or groups of persons, not all were so limited. Indeed, the uncontroverted evidence is that the "basic" rate was actually the highest subscription rate available. In addition to the subscription method, TIME could be purchased at the newsstand rate of $.50 per issue. Although it is not necessarily a conclusive factor, the average price of TIME during the

relevant period ranged from approximately $.16 to approximately $.17 per issue for all issues sold via any method.

■■ We do not agree that the real value of TIME is so obviously the "basic" subscription price of $.269 per issue as to entitle Time to summary judgment. From the evidence we conclude that a genuine issue exists as to TIME's value.

■■ Time next contends that even if the statement were proven false, Perlman could still not establish that Time was aware of the falsity or intended any deception. In order to establish fraud it is necessary to show that the defendant either had knowledge of the falsity and, hence, an intent to deceive, or acted in culpable ignorance as to the truth or falsity of the assertion. (*Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89.) The affidavit of Bruce Barnet, circulation director of Time, in support of Time's motion for summary judgment states that "Time believed and still believes that Perlman received more than full value for the unexpired portion of his LIFE subscription." However, the record also demonstrates that although Time had already decided upon the conversion plan under which Perlman would receive 43 issues of TIME in lieu of 60 issues of LIFE, it did not disclose the formula to Perlman in the solicitation letter. Time was aware that, relative to the total number of TIME subscriptions sold, a small percentage of subscribers actually paid the "basic subscription rate" at which Time was valued for purposes of the conversion. There is also evidence indicating that Time desired to minimize cash refunds and hoped LIFE subscribers would instead choose alternative magazines. The record certainly contains facts from which it could be inferred that Time either knew, or was culpably ignorant of the fact that the full value statement was false and that it intended to deceive Perlman.

■■ Time further contends that Perlman had no right to rely upon the representation because he had a duty and an opportunity to inquire as to the conversion formula before acting. A person may justifiably rely upon the representation of another where the parties do not have equal knowledge, or means of knowledge, of the facts represented, or where there are peculiar circumstances inducing the person to rely solely upon the representation; the right to rely depends upon all of the surrounding circumstances. (*Broberg v. Mann* (1965), 66 Ill. App. 2d 134, 213 N.E.2d 89.) We believe a question remains as to whether Perlman had a right to rely upon the representation of full value without making inquiry. Certainly Time had superior knowledge as to the value of TIME. Furthermore, the trier of fact could reasonably find that the solicitation letter was of such tone and language as to inspire confidence and induce Perlman to rely upon the representations therein.

Time also contends that the representation was both a promise to

perform in the future and an opinion and therefore not actionable. Although a promise to perform an act even though accompanied by an intention not to perform is not generally considered a false representation, an action in equity will lie where the false promise is the scheme or devise used to perpetrate the fraud. (*Roda v. Berko* (1948), 401 Ill. 335, 81 N.E.2d 912.) Furthermore, as was held in *Buttitta v. Lawrence* (1931), 346 Ill. 164, 178 N.E. 390, whether a statement is one of fact or opinion depends upon the circumstances of each case. As our supreme court stated:

> "Wherever a party states a matter which might otherwise be only an opinion but does not state it as the expression of the opinion of his own but as an affirmative fact material to the transaction, * * * the statement clearly becomes an affirmation of the fact within the meaning of the rule against fraudulent misrepresentation. Statements of value are common examples, and where made in pursuance of a scheme on the part of the defendant to induce plaintiff to trade with him such statements constitute fraud and deceit." 346 Ill. 164, 173, 178 N.E. 390, 393.

The record is not free from doubt as to whether Time promised full value as a device to defraud Perlman or whether the statement was of fact or opinion.

■■ Time finally contends that the failure to disclose the "basic to basic" conversion formula in the solicitation letter did not constitute a fraudulent concealment or omission of material fact. Concealment is actionable where employed as a device to mislead. (See *Department of Business & Economic Development v. Pioneer Trust & Savings Bank* (1973), 15 Ill. App. 3d 269, 304 N.E.2d 57.) In order to be material, the concealed fact must be such that had the other party been aware of it, he would have acted differently (*Rice v. Snarlin, Inc.* (1970), 131 Ill. App. 2d 434, 266 N.E.2d 183). Once again, a genuine issue exists as to whether the failure to state the conversion formula constituted a fraudulent omission or concealment.

For the reasons discussed, we do not believe that Time has clearly established the absence of any element necessary to Perlman's fraud action. Time's right to summary judgment on the fraud count was not absolutely clear as required. (See *Ruby v. Wayman* (1968), 99 Ill. App. 2d 146, 240 N.E.2d 699.) Accordingly, we reverse the summary judgment granted on count I and remand this count to the trial court for further proceedings.

## AS TO COUNTS II AND IV

■ In count II Perlman seeks recovery based upon an unjust enrichment theory, while in count IV he seeks damages for breach of contract.

Essential to a resolution of these counts is a determination as to whether or not Time delivered "full value" as promised in the solicitation letter. We have previously held that a genuine issue of fact remains as to the value of TIME and we incorporate our discussion of that issue here. A party's right to summary judgment must be free from doubt. (*Ruby v. Wayman* (1968), 99 Ill. App. 2d 146, 240 N.E.2d 699.) Accordingly, the summary judgment entered on counts II and IV is reversed and these counts are remanded for further proceedings.

## AS TO COUNT III

In count III Perlman alleges that Time violated the Consumer Fraud Act (Ill. Rev. Stat. 1971, ch. 121½, par. 261 *et seq.*). Although Perlman cites the 1973 act,* it is the 1971 act which applies here. Section 262 of that act provides:

> "* * * any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice * * *."

It has been stated that there is a clear mandate from the legislature to the courts to use the Consumer Fraud Act to the utmost degree to eradicate all forms of deceptive and unfair business practices. *American Buyers Club v. Hayes* (1977), 46 Ill. App. 3d 270, 271, 361 N.E.2d 1383, 1384.

We have already determined that genuine issues exist as to whether Time misrepresented, concealed or omitted any material facts in a fraudulent manner and as to whether Perlman sustained any damage as a result of receiving 43 issues of TIME as the full value of the remaining portion of his LIFE subscription. The Act affords even broader consumer protection than does the common law action of fraud since the Act also prohibits any "deception" or "false promise." Therefore, even if Perlman is unable to establish all the elements of fraud, he might still recover under the Act by showing that use of the term "full value" in the context of the solicitation letter was deceptive or by showing that Time made a promise which it did not intend to perform. These are questions upon which reasonable minds could differ based upon the record here.

---

* Section 2 of the Consumer Fraud and Deceptive Business Practice Act (Ill. Rev. Stat. 1973, ch. 121½, par. 262) incorporates section 2 of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1973, ch. 121½, par. 312) and further provides that "in construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." The 1971 Consumer Fraud Act did not contain these provisions.

Time contends, however, that the offer made to Perlman did not violate the Consumer Fraud Act since it complied with the rules of the Federal Trade Commission (FTC). Section 2 of the Consumer Fraud Act provides:

> "* * * [N]othing herein contained shall apply to any advertisement which is subject to and complies with the rules and regulations of, and the statutes administered by the Federal Trade Commission."

■■ Although the FTC apparently approved use of the "basic to basic" conversion formula, the record does not indicate that it authorized or approved the solicitation letter. The Federal Trade Commission Act prohibits unfair or deceptive practices in commerce. (15 U.S.C. §45(a)(1).) Whether or not Time engaged in such practices remains a genuine issue to be determined.

For these reasons we hold that summary judgment was improperly granted on count III and we remand this count to the trial court for further proceedings.

One final issue merits mention here. At oral argument counsel for Time contended that where both parties move for summary judgment the court must grant the motion of one party. We disagree. Summary judgment should be granted only where there is no genuine issue as to any material fact. (Ill. Rev. Stat. 1977, ch. 110, par. 57.) The mere filing of cross motions cannot act to confer power upon the court to grant summary judgment where genuine issues of fact still remain. The determinations of the respective parties is neither conclusive nor binding upon the court.

Accordingly, the orders of the trial court granting summary judgment in favor of Time are hereby reversed, the orders denying summary judgment to Perlman are affirmed, and the matter is remanded to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

MEJDA and WILSON, JJ., concur.